CYRUS S. KELLOGG

*v.*

LAURA P. HALE *et al.*

*Filed at Ottawa November 20, 1883.*

1. TRUST—*when the Statute of Uses executes and passes legal title to the person for whose use made.* Where a conveyance imposes on the trustee active duties with respect to the trust estate, such as, to sell and convert into money, or to lease the same and collect the rents, pay taxes, and make necessary repairs, etc., and pay the net proceeds to the beneficiary, it creates an *active* trust which the statute does not of itself execute.

2. Where an estate is conveyed to one person for the use of, or upon a trust for, another, and nothing more is said, the statute immediately trans-

fers the legal estate to the use, and no trust is created, although express words of trust are used. This has reference only to passive, simple or dry trusts. In such case the legal estate never vests in the feoffee, but is instantaneously transferred to the *cestui que use* as soon as the use is declared.

3.  Where a party conveyed real estate by a deed absolute on its face, but in trust to hold the title, lease the property, collect the rents, sell or reconvey, or make such disposition of the property as the grantor might order, it was *held*, that the trust created was an active and not a passive one, and the legal title vested in the trustee.

4.  HUSBAND AND WIFE—*settlement by husband on wife.* It has long been the settled law, both in England and in this country, that a conveyance of property from a husband to his wife, when made as a provision for her, will be sustained and upheld in courts of equity, when the rights of creditors are not affected.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. M. HUNTER, and Mr. J. R. HUNTER, for the plaintiff in error:

The effect of a trust conveyance to his own use on the part of Kellogg, was but to divest himself momentarily of the naked legal title, to be reinvested by the operation of the Statute of Uses, and the recorded deed to Peck remained only a cloud upon Kellogg's estate and title to the land. Rev. Stat. 1845, (Cooke & Co.'s ed.) chap. 24, pp. 958, 959, secs. 2, 3; *Witham* v. *Brooner*, 63 Ill. 345.

The legal estate never vested in the feoffee for a moment, but was instantaneously transferred to the *cestui que use* as soon as the use was declared. 2 Blackstone's Com. 332.

The object of the statute was to abolish uses, by destroying the estate of the feoffee to uses, and vesting it in the *cestui que use.* 1 Greenleaf's Cruise on Real Prop. title, "Use," chap. 3, pp. 316, 317; *Lynch et al.* v. *Swayne et al.* 83 Ill. 336.

This being so, Peck had nothing to convey, even if he was duly authorized to do so; but if complainant's wife was, by Peck's deed, invested with color of title, she became merely feoffee to the use of her husband.

Mr. JAMES SHAW, for the defendants in error:

A deed from a husband to a wife should be sustained in equity, when made.as a provision for her, and creditors are not affected thereby. Gifts from husband to wife are valid, when creditors are not injured. The duty of maintenance which a husband owes a wife is a sufficient consideration for voluntary conveyances vesting title in her, and courts of equity will sustain them. Property conveyed to a wife by a husband, or by his procurement, if no fraud is intended on creditors, will be treated as her separate estate. 2 Kent's Com. 115, (9th ed.) note b, 2; Schouler on Domestic Relations, (2d ed.) 284, 287; *Gill* v. *Wood, Admr.* 81 Ill. 64; *Yazel* v. *Palmer,* id. 82; *Sheppard* v. *Sheppard,* 7 Johns. Ch. 61; *Sunderland* v. *Sunderland,* 19 Iowa, 325; *Hunt* v. *Johnson,* 44 N. Y. 27; *Sims* v. *Rickets,* 35 Ind. 181; *Sayers* v. *Wall,* 26 Gratt. 354; *Indianapolis, Bloomington and Western Ry. Co.* v. *McLaughlin et ux.* 77 Ill. 275; *City of Chicago* v. *McGraw,* 75 id. 566; *Dale et al.* v. *Lincoln, Assignee,* 62 id. 22; *Lincoln* v. *McLaughlin,* 74 id. 11; *Hockett et al.* v. *Bailey,* 86 id. 74; *Cartwright* v. *Wise et al.* 14 id. 417; *Pike* v. *Baker,* 53 id. 163; Perry on Trusts, sec. 143.

If it be admitted that a trust could be established by parol in a case like the present,—and it is not admitted,—even then the complainant could not recover, on account of the unsatisfactory nature of the proofs relied on to establish the trust. Perry on Trusts, secs. 137, 226; *Woolam* v. *Hearn,* 2 L. C. in Eq. 684; Hill on Trustees, 167; *Lantry et al.* v. *Lantry,* 51 Ill. 458; *Parker* v. *Pierce et al.* 16 Iowa, 227; *Maple* v. *Nelson,* 31 id. 322; *Cartwright* v. *Wise et al.* 14 Ill. 417.

The Statute of Uses has no application to this case. In both conveyances,—that from Kellogg and wife to Peck, and from Peck and wife to Laura P. Kellogg,—the legal title and fee passed. *Meacham* v. *Steele et al.* 93 Ill. 135; *Kirkland* v. *Cox et al.* 94 id. 400; Perry on Trusts, sec. 738; 2 Washburn on Real Prop. sec. 20, p. 120.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Cyrus S. Kellogg, in the circuit court of Carroll county, against Laura P. Hale and others, to compel a conveyance of two hundred and fifty acres of land in Carroll county, which formerly belonged to Kellogg, but which, at the time of filing the bill, was held by the defendant Laura P. Hale, in her name. Kellogg was married to Laura P. Hale in 1848, in Carroll county. They resided there until the spring of 1853, when they moved to California. A short time before starting, Kellogg and his wife conveyed, by an absolute deed, the lands in controversy to Philetus Peck. The lands were not sold to Peck, but the understanding was that he should hold the title in his own name, rent the farm, keep it in repair, and make such a disposition of the lands, by sale or reconveyance, as Kellogg might in the future direct. In the summer of 1857 Mrs. Kellogg returned to Carroll county on a visit. She brought with her a letter, written by Kellogg to Peck, directing him to convey the Carroll county lands to her. Upon the presentation of the letter Peck conveyed the lands as requested, and Mrs. Kellogg has from that time to the present owned and received the rents from the lands, and paid the taxes, and kept up the repairs. At the time the deed was made to Mrs. Kellogg, she and her husband were residing together on good terms, and they continued to reside together until 1865, when they separated. In 1871 she obtained a divorce from her husband, and subsequently married Augustus Hale.

Kellogg, the complainant, seeks to obtain a decree in his favor, as we understand the argument, on the ground that the deed from Kellogg to Peck was a conveyance to his own use, and under the Statute of Uses, by operation of law, he became reinvested with the title to the property. The trust here was not in writing. The deed was absolute in terms, and purported to convey the title to Peck, but when the trans-

action is viewed in the light of the evidence, it appears that the property was conveyed to Peck in trust. He was to hold the title, lease the property, collect the rents, sell or reconvey, or make such disposition of the property as Kellogg might order. Was this such a trust as the Statute of Uses would execute? The answer to this question may be found in the former decisions of this court.

In *Meacham* v. *Steele*, 93 Ill. 146, where a question of this character was under consideration, it is said: "Where the conveyance imposes on the trustee active duties with respect to the trust estate, such as, to sell and convert into money, or to lease the same and collect the rents, issues and profits thereof, and pay them over to the beneficiary, it creates a trust which the statute does not execute." Here Peck, the trustee, had the entire charge of the property. It was his duty to rent, and collect the rents, pay the taxes, keep up the repairs, and in addition to this, upon request, sell and convey the property. The facts seem to bring the case directly within the rule announced in the case cited. ·

In *Kirkland* v. *Cox*, 94 Ill. 400, the effect of the Statute of Uses was under consideration, and it was held where an estate is conveyed to one person, for the use of, or upon a trust for, another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is created, although express words of trust are used. But this has reference only to passive, simple or dry trusts. In such case the legal estate never vests in the feoffee, but is instantaneously transferred to the *cestui que use* as soon as the use is declared. The facts surrounding the conveyance in this case do not bring the trust within what may be called a passive, simple or dry trust. The duties of the trustee had not been performed under the trust imposed by the deed and contract. Those duties were active, and so continued until the lands were conveyed, under the order and direction of Kellogg. Perry on Trusts, sec. 305, in speaking in regard

to special or active trusts, says: "If any agency, duty or power be imposed on the trustee, as by a limitation to a trustee and his heirs to pay the rents or to convey the estate, or if any control is to be exercised or duty performed by the trustee, * * * the operation of the statute is excluded, and the trusts or uses remain mere equitable estates." But the citation of other authorities on the question is useless. We are satisfied that the deed made to Peck passed the title to the property to him, unaffected by the Statute of Uses.

The only other question to be considered is, whether the deed from Peck to Mrs. Kellogg, made under the order and direction of Kellogg, passed the title to the property to Mrs. Kellogg. It is true that no consideration was paid for this conveyance, but when the deed was executed Kellogg was free from debt, and was worth, over and above the Carroll county lands, somewhere in the neighborhood of $20,000. He had no children, and the business in which he was engaged at the time was somewhat hazardous. Under such circumstances, if he thought proper to make a settlement of the property on his wife he had a right to do so. It has long been settled, both in England and this country, that a conveyance of property from the husband to the wife, when made as a provision for her, will be sustained and upheld in courts of equity, when the rights of creditors are not affected. (*Moritz* v. *Hoffman*, 35 Ill. 553; *Yazel* v. *Palmer*, 81 id. 82; *Hockett* v. *Bailey*, 86 id. 76.) As to the object of this conveyance there can be no doubt. At the time, Kellogg was in good circumstances, in no manner involved. The relations then existing between him and his wife were of the most intimate character. He no doubt thought it was an opportune time to settle upon her such an amount of property as would give her a comfortable support, if in the future adversity should overtake him and he should be without property.

We are not, however, without proof in regard to the object of the conveyance. Mrs. Hale, in her evidence, says: "Kel-

logg, at the time he wrote to Peck requesting him to convey the land to me, stated to me that I had always been a good wife, and that to insure me from coming to want by reason of any business reverses he might sustain in California, he intended to have Peck deed that land to me, to secure me from coming to want through any reverses that might come to him. It was his own voluntary act, without any solicitation from me whatever. There was no arrangement by which I was to hold the land for Kellogg, but it was understood to be for myself." This testimony places the character and object of the transaction beyond dispute. The conveyance to Mrs. Kellogg was the result of the voluntary act of the complainant, her then husband, and was intended as a provision for her, and we perceive no ground upon which a court of equity can interfere, and at this late day take the property away from her and give it back to the complainant.

The decree of the circuit court will be affirmed.

*Decree affirmed.*