## Heman Edgerly et al.

### v.

## The First National Bank of Lyons, for use, etc.

*Creditor's Bill—Fraudulent Conveyance—Secret Trust—Husband and Wife.*

1.    Only creditors having existing claims when it was executed can avoid a conveyance which is alleged to be fraudulent, unless it appears to have been made in anticipation of indebtedness to be incurred.

2.    Provisions for wife and children made by a husband and father will be upheld in equity, when no fraud is thereby perpetrated upon creditors.

3.    A conveyance by a husband to his wife through a third person with a view of securing a home for his family, will not be stamped as a secret trust so far as subsequent debtors are concerned, merely because he shares the home thus secured.

[Opinion filed January 10, 1889.]

APPEAL from the Circuit Court of Carroll County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Messrs. HUNTER & EATON, for appellants.

Provision, when made by the husband for the wife, will be sustained and upheld in equity when the rights of creditors are not affected.    Kellogg v. Hale, 108 Ill. 164.

The deed from Edgerly and wife to Wilson, recorded in the land records of said Carroll county, was notice to all persons of the rights of the beneficiary, Emma J. Edgerly, in said premises.    Such record was notice to the complainant and to all others that Heman Edgerly claimed no right or title to said premises, and as effectually protected the rights of Emma J. Edgerly as against all subsequent creditors of Heman Edgerly as though a conveyance in form had been made by James Wilson conveying said premises to Emma J. Edgerly, and the same had been placed on the public records of said county. St. John v. Conger, 40 Ill. 525; City of Chicago v. Wilt, 75 Ill. 211.

There was a conveyance made in good faith by Edgerly and his wife to Wilson, then taken and conveyed by him to the wife of said Edgerly, after using sufficient of it to pay all the indebtedness of the said Edgerly, and for her sole use and benefit, without any interest or secret trust therein for the benefit of Edgerly or to avoid the payment of debts subsequently to be incurred.    All the indebtedness of the said Edgerly was fully paid and satisfied, and the conveyance made voluntarily and without fraud, to provide for the support of his said wife, and

would be good as against all subsequent indebtedness incurred by said Edgerly.   Lucas v. Lucas, 103 Ill. 121.

Messrs. JAMES McCOY and JAMES SHAW, for appellee.

The rule is well settled that where the transfer of property is merely colorable, and a secret trust and confidence exists for the benefit of the grantor, the conveyance will be held void, both as against preceding and subsequent creditors.   Guffin v. First National Bank of Morrison, 74 Ill. 259; Hook v. Mower, 17 Iowa, 195; Jones v. King, 86 Ill. 225; Moore, Adm'r, v. Wood, 100 Ill. 451; Gordon v. Reynolds, 114 Ill. 118.

The law does not allow a debtor in failing circumstances, either directly or indirectly, to transfer his property to his wife, and thus place it beyond the reach of his creditors; but, on the other hand, when it is apparent, as in this case, that the debtor retains the real ownership of the property, it is the province of a court of equity to subject the property to the payment of the debtor's debts.   New v. Aldfield, 110 Ill., page 141; Whipple v. Whipple, 109 Ill. 418; Lawson et al. v. Funk, 108 Ill. 507.

" A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right   *   *   *   and gives to the debtor a beneficial enjoyment of what rightfully belongs to his creditors." Lukins v. Aird, 6 Wall. 78.

The general doctrine thus laid down is fully recognized in the numerous decisions of this court.   Griffin v. First Nat'l Bank of Morrison, 74 Ill. 259; Power v. Alston, 93 Ill. 587; Annis v. Bonar, 86 Ill. 128; Jones v. King, 80 Ill. 225; Emerson v. Burns, 69 Ill. 537.

C. B. SMITH, J.   This was a bill in chancery, in the nature of a creditor's bill, brought by appellee for use of MacMahon against appellants for the purpose of setting aside certain deeds of conveyance and to subject the lands described in the bill to the payment of a judgment held by appellee against Heman Edgerly, one of the appellants, and one Dan. E. Win-

gate for the use of MacMahon. The facts, as disclosed by the record, appear to be substantially about as follows: In the year 1856, Heman Edgerly was the owner of the lands now in controversy. In that year he executed a mortgage for $5,000 on all these lands to the Racine and Mississippi Railroad Company. This mortgage was, soon after its execution, claimed by Heman Edgerly to have been obtained from him by fraud and deceit. In afterward resisting the payment of this mortgage, and in trying to rid himself and his land of it, Edgerly involved himself in long and expensive litigation, the costs alone which he was compelled to pay amounting to over $2,300 dollars. He became otherwise involved in debt, and it became apparent to him that he could not pay his debts, and that all his property would be sacrificed, and he and his family left destitute un'ess he could obtain some assistance. Finding himself in this unfortunate condition, he consulted with his wife as to the best means to be adopted to escape the pending ruin. It was agreed between them that they should call on James Wilson, a brother of Mrs. Emma Edgerly, and ask him for assistance. After consulting with Wilson about the matter, it was agreed between Edgerly and his wife and Wilson that Edgerly and his wife should deed their lands to Wilson by an absolute deed, to enable him to raise money to pay all of Edgerly's debts, and it was also then agreed that after Wilson had paid, settled and discharged all of Heman Edgerly's debts that he, Wilson, should then deed the land to Emma Edgerly, the wife of Heman Edgerly, for a home for her. In pursuance of this agreement, Edgerly and his wife conveyed these lands to Wilson by two deeds, the first bearing date December 5, 1858, and recorded December 22, 1858, and the second being a quit-claim deed dated March 27, 1867, which last deed was recorded the 5th day of August, 1870.

Wilson, by these deeds, became the absolute owner of the land. He entered upon his trust and proceeded to raise money and settle and pay off Edgerly's debts and procure acquittances from his creditors, and so continued his efforts until all of Edgerly's creditors were paid or satisfied, and Edgerly again a free man, entirely out of debt.

In what manner Wilson procured money or secured the satisfaction of Edgerly's creditors, whether by himself or through Edgerly, does not very clearly appear from this record, nor is it important how it was done nor through whom it was done, nor to what use the land was put in order to accomplish the end desired—to pay the debts. The important fact is that the debts were paid and the land saved after Wilson took control of the matter. It can in no wise concern this appellant what favorable arrangements Wilson or Edgerly made with the creditors.

After the settlement or payment of all of Edgerly's debts, on the 22d day of December, 1876, Wilson, in pursuance of his original agreement, conveyed all the land he had received back to his sister, Mrs. Emma Edgerly, by two deeds, both bearing the same date, in the form they had been conveyed to him. These last deeds to Mrs. Edgerly were not recorded until the 3d day of October, 1882, but Mrs. Emma Edgerly and her husband had continually resided on and occupied the lands in dispute from the time they were deeded to Wilson in 1858 and in 1867.

After the conveyance of the lands to Wilson, and after Wilson conveyed to Emma J. Edgerly, Heman Edgerly continued in business for many years, was the owner and possessor of considerable personal property in his own right and to a much larger amount than would have been necessary to have satisfied appellant's debt.

The proof in the case shows that appellee had no claim of any kind against Heman Edgerly until 1879, twelve years after the last deed was made to Wilson and nine years after the same was recorded, and notice to all the world that Wilson and not Edgerly owned the land. But the note on which appellant took its judgment was dated January 7, 1882, for $600, and was executed by Heman Edgerly and Dan. E. Wingate. The original loan, however, was made in 1879 by one Williams, Wingate and Edgerly, and the loan, or others to take its place, were continually made and renewed until the last note of January, 1882. Heman Edgerly appears to have been originally only a security on the note.

This last note not being paid, was put in judgment against Wingate and Edgerly on the 22d day of September, 1882. Execution was issued on this judgment and returned *nulla bona*, and this bill is now filed for the purpose of setting aside these conveyances made by Wilson to Mrs. Edgerly, and to subject the land to the payment of the judgment of $630. The bill charges that they were fraudulent and intended to hinder and delay creditors, and alleges that Heman Edgerly is the equitable owner of the lands and prays for a cancellation of the deeds. The defendants answered the bill denying all fraud charged, and setting up the facts substantially as we have recited them, and denying that any secret trust was reserved in said conveyance to Wilson for the benefit of Heman Edgerly, and alleging that the conveyance to Wilson was for a lawful and valid purpose and upon a valuable and sufficient consideration, and that the trust reserved was for the benefit of his wife and family after all his just debts were paid.

Replication was filed and the cause heard upon bill, answer, replication, exhibits and evidence heard on the trial. The court found the issues for the complainant, and decreed the conveyance fraudulent and void as against complainant, and directed Heman Edgerly or Emma J. Edgerly to pay the amount of the judgment, interest and costs in sixty days, and in default of their doing so that the land be sold to satisfy the judgment.

We think this decree was erroneous. We have carefully and attentively studied this evidence, and entirely fail to find any evidence of fraud in fact or law as to complainant in any of the conveyances or transactions mentioned in this bill. On the contrary, the evidence satisfies us that the conveyances made to James Wilson by Heman Edgerly and Emma Edgerly were made for an honest and a laudable purpose. Heman Edgerly had become seriously and deeply involved in debt and litigation. His land was then under a heavy mortgage. He became satisfied that he could not pay his debts without assistance and time. His brother-in-law seems to have been a man of business character and able to aid him in his misfortune. The consideration upon which the land was conveyed

to Wilson was that Wilson should pay all his debts and use the land to aid him in so doing, and that when that purpose was accomplished and no creditor had any claim against Heman Edgerly, then the land should be deeded to his wife to secure her and his family and make them a "sure living thereafter." In all this transaction, from beginning to end, there was no shadow of actual or intended fraud against any existing creditor, nor is there a scintilla of evidence to show that the conveyance was made in anticipation of defrauding future creditors.   Fully twelve years elapsed after the second conveyance to Wilson, and after every foot of the land had passed by valid deeds to Wilson, before Heman Edgerly had any dealings with the bank.   It is utterly incredible to suppose that he then looked forward through these long years to secure credit of the bank, or any one else, and defeat their claim by this conveyance.   It has been long settled in this State that only creditors having existing claims when the alleged fraud was committed can avoid such conveyance, unless it be shown the deeds were made in anticipation of incurring debts to avoid which the conveyances are made.   Tunison v. Chamblin, 88 Ill. 378; Mixell v. Lutz, 34 Ill. 382; Moritz v. Hoffman, 35 Ill. 553; Gridley v. Watson, 53 Ill. 186.

It is the settled law of this State that men may do what they please with their property so long as they do not hinder or delay their creditors by such conveyances, and provision for wife and children made by a husband or parent will be upheld in equity when no fraud is perpetrated upon creditors by such provision.   Kellogg v. Hale, 108 Ill. 164; Gridley v. Watson, 53 Ill. 186.   Indeed, such provision, when it can be made without prejudice to creditors, is most commendable and should be encouraged and upheld by the courts.   Counsel for appellee cite us to a great array of authorities holding that when a conveyance is made absolute, but with a secret trust reserved for the benefit of the grantor, then and in all such cases the conveyance will be held void, both as to existing and subsequent creditors.   These authorities would be applicable to this case if the proof showed any such secret trust or reservation on the part of Edgerly for his benefit.   But

the complainant fails to furnish satisfactory proof that any such secret trust was reserved for the benefit of the grantor.

The only evidence in the record tending to establish a secret trust for the benefit of the grantor is a statement made by James Wilson in his testimony, as follows: "The land was transferred from me, after those liabilities were paid, to his wife. He (Heman Edgerly) said he wanted it transferred to her after he got straightened up, so as to make them a sure living." The provision here made for his wife, with whom he had a right to live, would necessarily be enjoyed by him as her husband. This right of enjoyment of the wife's property must always be one of the necessary incidents to all conveyances made by a husband to his wife so long as they live together.

Considering the relation of the parties and the right of a husband to live with his wife upon her property, the remark made by Heman Edgerly to Wilson is not sufficient to establish a secret trust in favor of himself. The great and primary object of these deeds was to provide, or rather, if possible, save a home for his wife and family after all his just debts were paid, and we do not think the fact that he also would share the benefits of the home with his wife and family would have the effect of stamping a secret trust upon it nor of branding the whole transaction as fraudulent and void, when the whole transactions, from beginning to end, show exactly the reverse to be true. The entire record shows an honest purpose on the part of Heman Edgerly, first, to use his property to raise money to pay all his debts, and then to place it in the hands of his wife by proper deeds of conveyance, when it would be secure against the misfortunes of the future.

We think the court erred in granting the relief prayed in the bill, and the decree is reversed and the cause remanded, with directions to the court to dismiss the bill for want of equity, at the costs of the complainant.

*Reversed and remanded.*