REASON MYERS *et al.*

*v.*

ANDREW J. MYERS *et al.*

*Filed at Springfield April 3, 1897—Rehearing denied June 3, 1897.*

1. TRUSTS—*when trust will not be executed by Statute of Uses.* Where land is conveyed under a parol agreement that it is to be held in trust, but the deed is intentionally and in good faith made absolute in form, purporting to be for a valuable consideration and to the sole use of the grantee, his heirs and assigns, the trust created is express, and is not executed by the Statute of Uses.

2. SAME—*grantee in deed absolute in form has sole power to declare express trust.* The grantee in a deed absolute in form, who holds the property under an express trust not evidenced by writing, has sole power to declare the trust, which power is not affected by subsequent deeds of conveyance made by his grantor.

3. STATUTE OF FRAUDS—*grantee may waive Statute of Frauds and declare express trust.* The grantee in a deed absolute in form may waive the benefit of section 9 of the Statute of Frauds, and, by answer to a bill in chancery or otherwise, declare that he holds the land in trust.

4. SAME—*when express trust may be proved by parol.* Where a grantee in a deed absolute in form declares in his answer to a bill in chancery that he holds the land under an express trust not evidenced by writing, but that he is unable to recall its precise terms and conditions, such terms and conditions may be proved by parol.

5. SAME—*grantee's declaration of trust is binding as to its nature and existence.* A declaration of trust contained in the answer of a grantee in a deed absolute on its face, to a bill for partition of his grantor's estate, is binding upon all parties, in the absence of fraud or mistake as to the nature and existence of the trust.

6. ESTOPPEL—*when party is estopped to plead the Statute of Frauds.* Where both complainants and defendants to a partition suit rely for title to certain property upon the answer to their bill by a grantee in a deed to the property absolute in form, which waives the defense of the Statute of Frauds and admits the existence of an express trust the terms of which rest in parol, neither side can insist upon the Statute of Frauds as against the other.

7. NOTICE—*subsequent purchaser with notice of prior unrecorded deed is bound thereby.* A subsequent purchaser of property who has notice of the existence of a prior deed, or has knowledge of facts and circumstances which charge him with notice, is bound by the terms of the prior deed though unrecorded.

APPEAL from the Circuit Court of Pike county; the Hon. OSCAR P. BONNEY, Judge, presiding.

WILLIAMS & WILLIAMS, for appellants:

Where a conveyance is made of land without consideration and without any distinct use or trust, the intent is presumed to be that it shall be held by the grantee for the benefit of the grantor, as a resulting trust. Story's Eq. Jur. sec. 1197.

At common law a feoffment made without consideration was held to be made for the use of the feoffor. Story's Eq. Jur. sec. 1199.

Where a conveyance is made limiting or parting with a particular estate only, leaving the remainder undisposed of, the residue will result to the use of the grantor, although the conveyance be made for a consideration. Story's Eq. Jur. sec. 1199.

Where an estate is conveyed for particular objects and purposes, which fail, or when accomplished do not exhaust the whole of the property, a resulting trust will arise for the grantor's benefit. Story's Eq. Jur. sec. 1200.

Where there is no consideration and no declaration of uses, the inheritance and right of alienation remain in the contracting party. Kent's Com. sec. 293.

Where the use limited by the terms of the deed has expired or cannot vest, or where no uses are declared by the conveyance, the use results back to the grantor who created it. Kent's Com. sec. 299.

A conveyance in trust which requires no duties, but leaves the trustee only a passive title, carries to the *cestui que trust* lawful seizin, estate and possession, and the *cestui que trust* may convey the estate by deed, without intervention of his trustee. *Witham* v. *Brooner*, 63 Ill. 344.

In the case of passive, simple or dry trusts the legal estate never vests in the grantee, but is instantaneously transferred to the *cestui que trust* as soon as the use is declared. *Kirkland* v. *Cox*, 94 Ill. 400.

Where an estate is conveyed to one person by a deed absolute on its face, but without consideration, the statute immediately transfers the legal estate to the use, and no trust is created. *Kellogg* v. *Hale*, 108 Ill. 164.

When the object fails the trust becomes a use, and is executed by the statute. *Meacham* v. *Steele*, 93 Ill. 135.

Where a conveyance is made in trust, and the object and purpose of the conveyance are expressly declared by the grantor, but not in writing, this will constitute an express trust, which is void under the Statute of Frauds. In such case there can be no implied trust. *Donlin* v. *Bradley*, 119 Ill. 412; *Carpenter* v. *Davis*, 72 id. 14; *Shelton* v. *Harding*, 44 id. 68.

In case of an express trust, if the defendant should by his answer admit the parol agreement and should insist upon the benefit of the statute, he will be fully entitled to it, notwithstanding such admission. 2 Story's Eq. Jur. sec. 758; Story's Eq. Pl. sec. 763; Perry on Trusts, sec. 85.

HARRY HIGBEE, and H. D. L. GRIGSBY, for appellees:

The Statute of Frauds was not enacted for the benefit of those seeking to defeat the operation of deeds absolute on their face by showing they were made upon trusts not appearing upon their face, but for the benefit of those claiming title under them. *Allen* v. *Woodruff*, 96 Ill. 11.

Where land has been conveyed by deed absolute in form, but designed to be held in trust, the grantee may declare a trust in an answer in chancery in a suit to which he is a party. *McLaurie* v. *Partlow*, 53 Ill. 340.

If a grantee, while holding the title to the land, makes a declaration that he holds the same in trust, by letter, affidavit, answer in chancery or even by deposition, such declaration will be binding upon him and a sufficient manifestation in writing to establish the trust. *Phillips* v. *Commissioners*, 119 Ill. 626; 1 Perry on Trusts, sec. 84.

If a subsequent purchaser has knowledge of an unrecorded conveyance when he makes his purchase he can

not protect himself against that conveyance. He is as much bound by his knowledge of the deed as he would be by its registration. *Rupert* v. *Mark*, 15 Ill. 540; 20 Am. & Eng. Ency. of Law, 584, note 3.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree in partition of two quarter sections of land, rendered by the circuit court of Pike county upon a bill filed by appellants. The land had formerly been owned in fee by Adam Myers, since deceased. The controversy arose among his children and grandchildren because of a difference of opinion as to the effect of certain deeds of conveyance made by Adam Myers, and of certain proceedings in said circuit court, wherein a decree had been rendered in a separate maintenance suit between said Adam Myers and his wife, affecting said lands.

The record shows that prior to April, 1881, said Adam Myers had become addicted to the excessive use of intoxicating liquors, and to such an extent that Henrietta Myers, his wife, was found by the court, at its April term, 1881, entitled to a decree for separate maintenance. She had before that filed her bill for divorce, but by the intercession of friends and counsel on both sides, and by agreement between herself and husband respecting questions of property, she was induced to abandon her divorce suit and to file her bill for separate maintenance, which she did, and in pursuance of which a decree was rendered, as above stated, on April 16, 1881. The evidence shows that the negotiations respecting the division and disposition of the property continued for some considerable length of time before an understanding was reached, counsel upon both sides urging a settlement and the adoption of some plan, in view of Myers' habit of getting intoxicated, for the preservation of the property. Finally, as the result, the litigants, Myers and his wife, united in a quit-claim deed for the purported consideration of five

dollars, but in fact without any consideration from the grantee, conveying in fee simple to Scott Wike, one of the defendants below and who was then one of Mrs. Myers' counsel, all of the land in controversy. No trust was expressed in the deed and none declared at that time by the grantee. The *habendum* clause was in the usual form, that the grantee should hold all of the estate, right, title, etc., of the grantors, either in law or equity, to the only proper use, etc., of the grantee, Wike, his heirs and assigns. About the same time counsel for the complainant in that suit, in pursuance of the agreement which had been verbally made between Myers and his wife, prepared a draught for a decree in the suit for separate maintenance, which was submitted to the opposing counsel and was then agreed upon so far as questions of property were concerned. This writing provided, as is admitted by the argument on both sides, that the wife, Mrs. Myers, should, in addition to certain personal property, have for her separate maintenance a certain eighty-acre tract of the land "for and during the period of her natural life, and at the expiration of her life the said land is to revert to said Adam Myers, if he should survive her, for and during the period of his natural life, remainder over to the children of said Adam Myers and Henrietta Myers, named in said bill, to-wit, Margaret McMullen, Ann Eliza Shellhorse, Wilhelm Myers, Sarah Roan, Freelove Thomas, Reason Myers, Henry J. Myers, Samuel L. Myers, Charles Myers and Adam Myers, Jr., in fee." It was further provided that Adam Myers was to have the rest of the land for his life, and there was a similar provision for remainder over to the children as in respect to the land assigned to the wife. The abstract does not, however, show this provision in the decree as originally drawn, nor contain any reference to it in the record.

The court heard the evidence in the suit for separate maintenance, found the issues for the complainant, and

then entered the decree which had been drawn and agreed upon by the parties, except that, for the reason that the children of the parties to whom the remainder was given by the decree as drawn were not parties to the suit, that provision was stricken out by the court and the provision inserted that Mr. and Mrs. Myers should hold the respective tracts set apart to them until the further order of the court. No further decree or action was ever taken in the case. They took possession of said tracts so set apart to them, respectively, and so occupied and used them until Mrs. Myers' death, when Adam Myers took possession of the tract she had occupied and used it as his own. On May 11, 1889, Adam Myers made two deeds, one to Douglas Hoskins, a grandson, and one to Charles Henry Myers, a son, conveying to each portions of the lands in question; and afterward made three other deeds, of date November 27, 1891, dividing the rest of such lands among three other of his sons, viz., Samuel Myers, Adam Myers, Jr., and Andrew J. Myers. These several grantees took possession of the respective tracts conveyed to them, and some of them made permanent and valuable improvements. The question is raised whether there was any delivery of some of these deeds, but from the view we take of the case that question becomes immaterial.

Adam Myers died June 7, 1892, and his other children not provided for in the division which he sought to make of the lands by the five deeds last mentioned, brought this bill against the grantees in such deeds and against Scott Wike, the grantee in the original deed of April, 1881, upon the alleged ground that all of said lands were by said deed to Wike, in connection with the agreement and the proceedings in the separate maintenance suit, conveyed to him in trust for the use of said Adam Myers and Henrietta, his wife, during their respective lives, and after their death to all their children before mentioned, and the descendants of any deceased child; in fee simple. The trust alleged in the bill was an express trust.

The several grantees in the five deeds above mentioned answered the bill, claiming title to the respective tracts occupied by them under their deeds. They denied the express trust alleged in the bill and set up the ninth section of the Statute of Frauds, providing that any such trust should be null and void unless manifested and proved by some writing signed by the party enabled by law to declare such trust. They also answered that the Wike deed was made for a temporary purpose, in connection with the suit between Myers and his wife, and when the decree therein was rendered the trust ceased and the title instantly reverted to the grantors.

Wike's answer to the bill, omitting the formal part, was as follows: "This defendant admits and avers that said Adam Myers and his said wife, the said Henrietta Myers, did, on or about the 11th day of April, A. D. 1881, by their certain deed of conveyance of that date, convey in fee simple to this respondent the said premises, which said deed, upon its face and by its terms, was and is absolute, and that the same was delivered to the said respondent, Scott Wike. This defendant further answering says, that although the said deed purports upon its face to be a conveyance in fee simple absolute, yet that in fact the said deed was at the time of its execution and delivery intended by each and all of the parties thereto to be a conveyance in trust to the said Wike as trustee for certain purposes, in connection with a certain suit then pending in chancery in the circuit court of said Pike county, brought by the said Henrietta Myers for her separate maintenance against her husband, the said Adam Myers, since deceased. This respondent further states as his opinion and belief, that the said conveyance was made to him, as aforesaid, as a part of an amicable arrangement and agreement between the said Adam Myers and his wife for the disposition and enjoyment of the said premises between themselves, in connection with and as an adjunct to the determination of the said suit then

pending in said court, but the exact nature, terms and character of the condition of said trust respondent can not now state, as he does not remember the same. Respondent states that he was, at the time the said conveyance was made as aforesaid, one of the attorneys employed by the said Henrietta Myers in the prosecution of her said suit against her said husband, and that he was associated as attorney in the conduct and prosecution thereof with A. C. Matthews and Harry Higbee, attorneys at law, as co-partners in the practice of law, and that the said Matthews and Higbee, as partners of the said respondent, had much to do with the management and prosecution of the said suit and in the final management, adjustment and disposition of the property arrangement as between the parties to the said suit, and that the deed aforesaid was drawn up and prepared by the said Higbee, and was acknowledged before him as notary public. Respondent believes that the definite terms of the said trust were negotiated and arranged more particularly by and between the said Matthews and Higbee personally, on the part of the said Henrietta Myers, with the said Adam Myers and his attorney, Jefferson Orr, Esq., than by this said respondent, and which, to respondent's satisfaction, accounts for his, respondent's, want of recollection and knowledge as to the terms of said trust. Respondent further states it as a matter of belief which he gathered from his co-partners aforesaid, from time to time, and the circumstances of the case as he now remembers them and as they appear from an inspection of the papers in the said suit for maintenance, that said deed was designed and executed to prevent either the said Adam Myers or the said Henrietta Myers from squandering or alienating the premises mentioned in the said deed. This respondent disclaims all personal interest in the premises aforesaid, and is ready and willing to make conveyance thereof to such party or parties as this honorable court may find entitled

thereto, and asks to be held and kept harmless of and from all costs in the premises."

The evidence, which was voluminous, was taken before the master, and upon a hearing the court found for the complainants, and that the purpose of said deed to Wike was to place the title in fee to said lands in him to be held in trust during the lives of the grantors for their use, and after their death to vest in all their children in equal shares, the descendants of any deceased child to take the parent's share.

The contentions of counsel for appellants are summarized and stated by them as follows: "First, that the conveyance, being voluntary, without consideration and without declaration of uses, the title never passed, but resulted to the use of the grantor,—that he had full power of alienation, and by his deeds vested good title in the defendants; secondly, that although it may have been an express trust by oral agreement of the parties, it is inoperative, so far as the parties claiming the benefit of the trust are concerned, by reason of the fact that it rests in parol, and the character and nature, objects and purposes of the same are not manifested and proven in writing; third, that the deed was made for a temporary purpose, in connection with and as an adjunct to certain divorce proceedings involving the temporary distribution of the property; that by the rendition of the decree the objects and purposes of the deed were accomplished, and that the title thereupon, *eo instanti*, reverted to the use of the grantor, and that at the time of the making of the deeds to the defendants Adam Myers was possessed of both the legal and equitable title to the property."

The first proposition is clearly untenable. The deed was absolute upon its face, and purported to be for a valuable consideration and for the sole and only use of the grantee. There was no fiduciary relation between Myers and Wike; no undue influence; not only no fraud,

but there was the utmost good faith on the part of the
trustee and of counsel; and it being clear that there was
an express trust no implied trust could arise, and the
express trust was not of such a nature as, upon the mak-
ing of the deed, to re-transfer the title by virtue of the
Statute of Uses to himself in fee.    It is not a case where,
by the terms of the conveyance, the trust was executed
by the Statute of Uses.    The deed did not purport to be
for the use or benefit of a third person or of the grantor,
so that, as a simple, passive or dry trust, the title and
right of possession would, by virtue of the Statute of
Uses, pass at once to the beneficiary or usee and no trust
be created, but the conveyance was absolute and to the
sole use of the grantee and his heirs.

The cases cited by appellants are inapplicable.  Thus,
it was held in *Donlin* v. *Bradley*, 119 Ill. 412, that where
the use is expressly limited to the grantee, and there is
no fraud or mistake, there can be no trust in favor of
the grantor, and in such a case there would, of course, be
no trust or confidence for the Statute of Uses to operate
upon, or, in other words, to destroy, by the instant con-
version of it into an absolute estate in the *cestui que trust*.
In *Witham* v. *Brooner*, 63 Ill. 344, cited by counsel, the deed,
on its face, created a naked or dry trust by simply con-
veying the property from Summers and wife to Hollow-
bush "in trust for White and Smith forever."    *O'Melia* v.
*Mullarky*, 124 Ill. 506, holds the same.  In *Kirkland* v. *Cox*, 94
Ill. 400, the undisputed principle was thus stated (p. 411):
"Under the Statute of Uses, which is in force here, where
an estate is conveyed to one person for the use of or upon
a trust for another, and nothing more is said, the stat-
ute immediately transfers the legal estate to the use, and
no trust is created although express words of trust are
used.    (Perry on Trusts, sec. 298.)    And so we have ex-
pressly held.—*Witham* v. *Brooner*, 63 Ill. 344; *Lynch et al.*
v. *Swayne et al.* 83 id. 336."    But we cannot see that that
case supports appellants' contention in the case at bar.

So in *Kellogg* v. *Hale*, 108 Ill. 164, cited by appellants, it was held, upon a review of other cases, that the trust in that case, which did not appear by the deed but which was shown to have been an express trust, was an active trust and was not executed by the statute. Nor, where there is an express trust, can there be a resulting or implied trust. (*Stevenson* v. *Crapnell*, 114 Ill. 19; *Moore* v. *Horsley*, 156 id. 36.) And it is clear that there was an express trust in this case. The bill alleges one, the answer of appellants, while denying the one alleged in the bill, alleges another, and the answer of Wike, the trustee, alleges and declares an express trust, the precise terms of which, as affecting the title here at issue, while left in uncertainty, still show that the trust was an express trust; and the evidence shows that there was an express trust. So that if it could be said that Wike had no duties to perform, but was a mere naked trustee, and that the trust was a passive or dry trust, which, by the terms of the Statute of Uses, would be executed by it and the title pass at once to the beneficiaries, still, only such title would have passed to Adam Myers as was provided by the trust, and if that were shown to have been a life estate only, appellants would not be benefited, for under their deeds they claim the fee, he being dead. *O'Melia* v. *Mullarky, supra*.

The next two propositions of the appellants may be considered together. They have pleaded the Statute of Frauds as to the alleged express trust set up in the bill, and insist that the testimony of witnesses tending to show that such a trust was distinctly agreed upon and established by the parties competent to establish it can not be considered. But they insist by their answer, and also in argument, that there was an express trust created, and that that was, that the property should be, and was, conveyed to Wike for a temporary purpose, in connection with and as an adjunct to the divorce or separate maintenance suit, to carry out the purposes of that suit, and

that when the final decree was therein rendered the object of the trust was accomplished, and the title in fee, subject to that decree, reverted to the grantor in the Wike deed, and that said deed thereupon ceased to have any effect. It is claimed, also, that this express trust set up in the answer by appellants and insisted on by them was manifested and proved by the answer herein of Wike, the trustee, and the record in the suit for separate maintenance, without resort to parol evidence.

We do not think this position is sustained by the writings in question. The answer, which declares that the conveyance was in trust, must be taken as a whole, (Perry on Trusts, sec. 65,) and when so considered it shows, we think, that the precise terms and conditions of the trust, and the agreement to carry out which the conveyance was made, were not contained in any writing, so that to deduce the temporary trust insisted upon, whereby, upon its accomplishment, it would appear that the title reverted to Adam Myers in his lifetime, would be inconsistent with a part of the writings themselves. We do not think it can be said that the terms of the trust can be ascertained without resort to parol evidence. The same may be said in answer to the contention of appellees, (if, from the state of the record, that contention can be considered,) that the draught for a decree to be entered by consent in the suit for separate maintenance, as drawn and agreed upon by counsel for the respective parties, taken in connection with the answer of Wike, constituted an express trust manifested by a writing signed by the person who was able to declare the trust. It will be remembered that that decree as drawn provided for life estates in the parents, with remainder to all the children, naming them. But this provision was stricken out, and, as shown by the testimony, by the court, for the reason that the remainder-men were not parties to the suit. It is insisted, however, that it could still be read, and that it showed the agreement of the parties and was in writing,

and that, when read in connection with Wike's answer, it was a sufficient compliance with the statute. Whatever force there may be in this suggestion, still this writing was not signed by any party who could declare the trust, and without considering the point further, as the record stands, we are satisfied that the agreement as to the terms and conditions of the trust as finally made rested in parol, and that it may be proved by parol. If effect were given to this writing, the result would be the same as that produced by the parol evidence.

By the absolute deed made to Wike for his sole use, Wike had the sole power to declare the express trust, if any there were, and this power remained unaffected by the subsequent voluntary conveyances made by Myers to appellants. When, therefore, Wike subsequently did make the declaration of trust as contained in his answer in this suit, to which these litigants were, of course, parties, and themselves insisting upon a trust, showing that the terms and conditions of the trust rested in parol, and waived the Statute of Frauds, such answer, in the absence of fraud or mistake, was binding upon all parties. Wike might have maintained ejectment against appellants, and could have successfully pleaded the Statute of Frauds to any bill which any of the parties might have brought against him. *Moore* v. *Horsley,* 156 Ill. 36; *Trustees* v. *Wright,* 12 id. 432; *Biggins* v. *Biggins,* 133 id. 211; *Scott* v. *Harris,* 113 id. 447; *Phillips* v. *Park Comrs.* 119 id. 626; *Champlin* v. *Champlin,* 136 id. 309; *McLaurie* v. *Partlow,* 53 id. 340; *Donlin* v. *Bradley,* 119 id. 412; *Carpenter* v. *Davis,* 72 id. 14.

In *Allen* v. *Woodruff,* 96 Ill. 11, it was said (p. 24): "The Statute of Frauds, requiring express trusts to be manifested or proven in writing, was enacted for the benefit of those claiming title under deeds or other instruments absolute on their face, and not for the benefit of those seeking to defeat the operation of such deeds by showing that they were made upon trusts not appearing upon their face."

Considering the deeds to appellants as voluntary, or that they had notice of the Wike deed, their rights in the premises were no greater than their grantor had possessed. Neither they nor their grantor could have pleaded the Statute of Frauds as against Wike nor as against any claiming under him, and we think it follows they could not plead it as against beneficiaries claiming under the trust which, by virtue of the absolute conveyance to Wike, he had full authority to declare. Under his deed, no fraud, mistake or circumstances being shown from which the law would raise a resulting or implied trust, if he had pleaded the statute neither appellants nor appellees could have wrested the title from him by proof of an express parol trust. Even if he had admitted the trust but pleaded the statute, his defense would have been complete. (1 Perry on Trusts, sec. 85; *Davis* v. *Stambaugh*, 163 Ill. 557.) It would seem to follow that both appellants and appellees were bound by the trust which he might declare, for without it he had the whole estate, and there was no trust in favor of either party capable of proof. But he answered the bill, disclaiming all interest in the premises except as trustee, and declared that the deed was made to him in trust for *certain purposes*, in connection with the separate maintenance suit, and (further as his opinion and belief) "as a part of an amicable arrangement and agreement between the said Adam Myers and his wife for the disposition and enjoyment of the said premises between themselves, in connection with and as an adjunct to the determination of said suit then pending in said court, *but the exact nature, terms and character of the condition of said trust respondent cannot now state, as he does not remember the same.*" His answer further states as his belief that the terms and conditions of the trust were negotiated more particularly by others, and that said deed was designed to prevent the grantors from squandering or alienating the property. He did not plead the Statute of Frauds, and there-

fore waived it: Both parties availed themselves of this answer, appellees to show that the trust was for their benefit, giving them the remainder in fee, and appellants to show that it was for a temporary purpose, which having been accomplished in the lifetime of Adam Myers, the title reverted to him and then passed to them by their respective deeds. Claiming through Wike's answer, which waived the statute and practically admitted a parol express trust, we are unable to see how any of the parties could insist on the statute as against their adversaries. Practically the alleged rights of each and all of the parties had their origin in that answer, and, as before said, in the absence of fraud or mistake no reason is perceived why they should not be bound by it.

Our conclusion is, that the case was one for parol proof. In this proof as made there is on the principal question no conflict. Judge Matthews and Judge Orr, who were opposing counsel in the suit for separate maintenance, and who negotiated the agreement between Myers and his wife referred to in the answer of the trustee, agree in their testimony that the agreement was that the property was to be held under the Wike deed, in connection with the decree in the chancery suit, for Myers and his wife during their lives, with remainder in fee to their children in equal shares, the descendants of any deceased child to take their parent's share. There is some claim that as to one or more of appellants they paid a valuable consideration for, and had made valuable improvements on, the lands conveyed to them; but the evidence showed that all these grantees had notice of the deed to Wike, or knowledge of such facts as charged them with such notice, so that, notwithstanding the deed was not recorded, they were bound by it.

Finding no harmful error in the record the decree of the circuit court is affirmed.

*Decree affirmed.*